UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 05-cv-02174-WYD

SHARON K MRACEK,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

_____

**ORDER**
_____

I.    <u>INTRODUCTION</u>

    THIS MATTER is before the Court on a review of the Commissioner's decision that denied Plaintiff's application for disability insurance benefits under the Social Security Act. 42 U.S.C. §§ 401-433. Plaintiff's application for Disability Insurance Benefits, filed July 15, 2003 (Transcript ("Tr.") at 84-86) was denied on initial determination. *Id.* at 63-67. Following a hearing in February, 2005, (*id.* at 489-542) Administrative Law Judge ("ALJ") James W. Olson issued an Unfavorable Decision on April 26, 2005 ("decision"), finding that Plaintiff was not disabled. *Id.* at 16-28.

    In the decision, the ALJ found at step one of the five-step sequential analysis required by law that Plaintiff had not engaged in substantial gainful activity ("SGA") since the alleged onset date, January 15, 2003. *Id.* at 17. As to steps two and three, the ALJ found that Plaintiff has a dysthymic disorder, bilateral knee osteoarthritis, subpatellar arthritis and tenosynovitis, and has knee and back pain, and obesity,

impairments which are considered to be "severe" under Social Security Regulations. *Id.* at 17. However, the ALJ concluded that Plaintiff's impairments, individually or in combination, do not meet or medically equal one of the Listings. *Id.* at 17-19. Specifically, the ALJ found that State Agency physicians and examiners concluded that the claimant's impairments did not meet or equal a Medical Listing, that no consultative examiner has concluded that a Medical Listing is met or equaled, that the medical expert did not conclude that a Medical Listing was met or equaled, and that based on the ALJ's independent review, no Medical Listing is met or equaled. *Id.* at 19.

The ALJ then proceeded to evaluate Plaintiff's residual functional capacity ("RFC") to perform the requirements of her past relevant work or other work in the national economy. *Id.* at 17-20. The ALJ observed that Plaintiff alleges disability since January 15, 2003 due to "bad ankle on left foot and bad knee on right leg." *Id.* at 21. At the hearing, claimant testified that she is unable to work due to knee pain, shortness of breath, and depression. *Id.*

In regard to Plaintiff's knee pain, the ALJ considered the opinions of Plaintiff's chiropractor Philip Pollock, who, based on his examination of Plaintiff on December 23, 2002, diagnosed Plaintiff with chronic degenerative joint disease of both knees and opined that without continued care her condition will deteriorate such that she will need a knee replacement. *Id.* at 21. Because chiropractors are not acceptable medical sources, the ALJ did not consider Mr. Pollock's report as medical opinion.

The ALJ next considered evidence from the disability evaluation conducted by Dr. Durand Kahler on April 8, 2003. Followed that evaluation, Dr. Kahler assessed

Plaintiff with bilateral knee osteoarthritis with moderate joint space of the medial compartment of the right knee, lower back discomfort possibly of mild underlying degenerative disc and chronic strain condition from Plaintiff's obesity.  *Id.*  Dr. Kahler concluded that Plaintiff had "full manual dexterity with her hands and has capabilities of ambulation that are certainly somewhat impaired but also resulting from obesity that needs treatment."  *Id.*  The ALJ considered information from a second disability determination made by Dr. Kahler on October 9, 2003 in which he "assessed [Plaintiff] with bilateral knee osteoarthritis, subpatellar arthritis and tenosynovitis affecting mobility, and low back pain with possible underlying degenerative disc disease and pain associated with [Plaintiff's] pronounced obesity."  *Id.* at 22.

The ALJ also considered a Physical Residual Functional Capacity Assessment of April 21, 2003, which was performed by a an Agency physician who opined that Plaintiff could "lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk (with normal breaks) for at least 2 hours in an 8-hour workday, sit for a total of 6 hours in an 8-hour workday, was unlimited in push and/or pull activities (including operation of hand and/or foot controls) . . . and has postural limitations of occasional except frequent balancing but never any climbing of ladders, ropes or scaffolds, with no manipulative, visual, communicative or environmental limitations."  *Id.* at 21-22.

The ALJ notes that in January 2004, Plaintiff was diagnosed with dysthymic disorder and assessed a Global Assessment of Functioning Scale ("GAF") of 35.  *Id.* at 22.  However, in a psychological report of June 25, 2004, Dr. Mack Green, Ed.D. diagnosed Plaintiff with a dysthymic disorder and borderline traits, and assessed

Plaintiff with a GAF of 59.  *Id.* at 22.  According to Dr. Green's report, Plaintiff was functioning intellectually within the low average range relative to verbal reasoning abilities but within the borderline range with regard to perceptual organizational skills. *Id.*

Three witnesses testified the hearing.  First, clinical psychologist Nancy Winfrey testified that Plaintiff had been diagnosed with dysthymia disorder, or mild depression. The ALJ considered Dr. Winfrey's testimony, as well as a medical source statement she completed which concluded that Plaintiff's depression caused only mild limitations in her ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods.  *Id.* at 23, 493-95.

Plaintiff also testified at the hearing regarding her prior work history and her current limitations. Plaintiff testified that she performs household chores such as cooking, shopping, and cleaning, and engages in hobbies such as knitting, crocheting, and plastic work, and attends church.  *Id.* at 24.  However, Plaintiff stated that she is not able to vacuum and shop or perform other chores all in the same day.  *Id.* at 518. Plaintiff further stated that sometimes she finds it hard to concentrate and follow written or verbal directions, and that she is able to sit for only 10 to 20 minutes at a time.  *Id.* at 24.  Plaintiff also testified that she prepares meals, shops for herself, takes her son to work, visits with family and friends, plays church games, that she can stand for ½ hour, walk for ½ block, and lift 15 pounds with each hand, lift 30 pounds total and carry 30 pounds for 25 feet.  *Id.* at 24, 519-20.  In addition, the ALJ observed that Plaintiff was able to sit through the entire hearing which lasted more that 1 ½ hours.  *Id.*

Finally, the ALJ heard testimony from Deborah Christensen, a vocational expert. *Id.* at 530-41. When the ALJ asked Ms. Christensen to consider what types of jobs an individual with Plaintiff's physical and psychological limitations could perform, Ms. Christensen opined that she could perform unskilled, light jobs of assembler of small products, a cashier and the unskilled sedentary job of final assembler. *Id.* at 26, 533-34. Ms. Christensen further testified that there are a significant number of these jobs in the national economy. *Id.*

In his written decision, the ALJ concluded that Plaintiff's statements concerning her impairments and their impact on her ability to work were not entirely credible in light of the medical evidence and the discrepancies between the claimant's assertions and the information contained in various reports. *Id.* at 23. The ALJ noted that while Plaintiff's impairments may cause her discomfort, her use of medications does not suggest the presence of limiting pain. *Id.* The ALJ also noted that Plaintiff takes no medications designed to treat her psychiatric or mental symptoms, and although recommended, is not undergoing any mental health treatment. *Id.*

As to Plaintiff's testimony that she experiences shortness of breath, the ALJ noted that she takes no medication for this issue, and that the medical records provide no diagnosis indication any respiratory issues. *Id.* The ALJ further noted that none of the valid opinions form treating or examining physicians indicating that Plaintiff is unable to work. *Id.* Instead, the ALJ concluded that Plaintiff's description of her daily activities are inconsistent with her complaints of disabling symptoms and limitations. *Id* at 23-24. Finally, the ALJ noted that this is Plaintiff's sixth application claiming

disability, and a review of claimant's work history shows that she worked only sporadically prior to the alleged disability onset date. *Id*. at 24.

The ALJ concluded that the evidence supports the following findings:

> that Plaintiff retains residual functional capacity to lift and or/carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk (with normal breaks) for at least 2 hours in a 8-hour workday, sit (with normal breaks) for a total of about 6 hours in an 8-hour workday, is unlimited in push and/or pull activities (including operation of hand and/or foot controls) other than as shown for lift and/or carry, occasionally climb ramps/stairs, stoop, kneel, crouch and crawl and frequently balance but should never climb of [sic] ladders, ropes or scaffolds, who has no manipulative, visual, communicative or environmental limitations, and who has slight limitations (i.e., there is some mild limitations but the claimant can generally function well) in an ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended complete a normal workday or workweek, and perform at a consistent pace.

*Id*. at 24.

At step four of the five-step analysis, the ALJ found that Plaintiff is unable to perform any of her past relevant work. *Id*. at 25. As to step five, the ALJ found that, based on Plaintiff's residual functional capacity, she is capable of performing a significant rage of light work as defined in 20 C.F.R. §§ 404.1567 and 416.967, using Medical-Vocational Rule 202.21 and 202.14. *Id*. at 26. Based on the testimony of the vocational expert, the ALJ concluded that considering Plaintiff's age, education, work experience, and RFC, she is capable of making a successful adjustment to work that exits in significant numbers in the national economy. *Id*. at 26.

The ALJ concluded that Plaintiff was not under a "disability," as defined in the

Social Security Act, at any time through the date of the decision. *Id.* at 26.

Following the hearing, Plaintiff submitted a copy of the Tenth Circuit's decision in *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992), a supplemental report from Dr. Green, other supplemental materials and a written statement from her sister. *Id.* at 143, 189-221.

On September 2, 2005, the Appeals Council declined review of the ALJ's determination making the case final for judicial review. *Id.* at 6-9. This Court has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g).

II.   ANALYSIS

   A.   Standard of Review

A Court's review of a finding that Plaintiff is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). It requires more than a scintilla of evidence but less than a preponderance of the evidence. *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487

(10th Cir. 1993).  Although the court should carefully examine the record, it may not weigh the evidence or substitute its discretion for that of the Commissioner.  *Id.*

      B.     <u>Analysis of Plaintiff's Arguments</u>

           1.     <u>ALJ's Evaluation of Plaintiff's RFC</u>

Plaintiff first asserts the ALJ and Appeals Council failed to assess the aggregate or combined effects and limitations imposed by all of Plaintiff's "mental, emotional, psychiatric, psychological, cognitive, and other non-exertional impairments or limitations of record" in regard to Plaintiff's ability to engage in work on a full time basis. Op. Br. at 4.  Specifically, Plaintiff contends that the ALJ ignored or mischaracterized the opinions of Plaintiff's "treating, evaluative, or consultive health care provides," in favor of reliance upon select portions of the opinions from Defendant's consultative evaluator, testifying psychologist, and agency physician.  Plaintiff also contends that the ALJ did not properly consider mental health care records from Centennial Mental Health and North Range Behavioral Health, and the report of clinical psychologist who evaluated Plaintiff at the request of the Colorado Department of Rehabilitation on November 22, 2000.  Op. Br. at 5-7

This contention is without merit.  A review of the record and the ALJ's decision reveals that the ALJ did consider the testimony of Plaintiff's chiropractor, as well as reports from Dr. Kahler and Dr. Gardner and, as a result, the ALJ found the Plaintiff was suffering from several severe physical impairments.

The ALJ also considered evidence in the record regarding Plaintiff's mental limitations.  The ALJ considered evidence from Plaintiff's hospitalization in January

-8-

2004 at North Range Behavioral Health, and the June 2004 psychological examination by Dr. Green in addition to the medical expert testimony from Dr. Winfrey.  After completing a Psychiatric Review Technique Form ("PRTF") Dr. Winfrey found Plaintiff had no limitation in restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace.  Defendant acknowledges that Dr. Winfrey testified that she completed the PRTF prior to reviewing Plaintiff's most recent mental health treatment notes, however, Dr. Winfrey testified that if she had considered this evidence, she might change her assessment of Plaintiff's restrictions of activities of daily living to "mild."  *Id.* at 505.

The ALJ was entitled to rely on Dr. Winfrey's testimony as a medical advisor that Plaintiff suffered only "slight" limitations in her mental abilities.  *Richardson v. Perales*, 402 U.S. 389, 408 (1971).  In addition, the ALJ was entitled to assess Plaintiff's credibility, and the ALJ's conclusion that Plaintiff's self-described daily activities are inconsistent with her claimed disabling limitations provide support for the ALJ's conclusion regarding the severity of Plaintiff's claimed limitations.  "'Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence.'" *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Diaz v. Sec. of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)).  Here, a review of the record reveals that the ALJ's conclusions regarding Plaintiff's subjective complaints are supported by substantial evidence.

Finally, a person is disabled within the meaning of the Social Security Act "only if

his physical and mental impairments, considered in combination, preclude him from doing his previous work, as well as any other 'substantial gainful work which exists in the national economy.'" *Franklin v. Chater*, 104 F.3d 367, 1996 WL 731591 (10th Cir. 2001) (quoting 42 U.S.C. § 423(d)(2). In this case, the ALJ correctly noted that no treating or examining physician concluded that Plaintiff's physical or mental impairments, or combination thereof, left her unable to work.

### 2. ALJ's Determination of Plaintiff's Ability to Perform a Range of Light Work

"A claimant will not be found disabled if she can perform 'work that exists in the national economy,' which means 'work ... exist[ing] in significant numbers either in the region where [the claimant] lives or in several regions of the country.' *Prince v. Apfel*, 149 F.3d 1191 (Table) (10th Cir. 1998) (quoting 42 U.S.C. § 423(d)(2)(A)). Once the ALJ determines that a claimant cannot perform any of her past work with her remaining RFC, then the ALJ bears the burden to show that jobs exist in the regional or national economies that the claimant can perform with the limitations the ALJ has found her to have. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

Plaintiff first complains that the ALJ did not fully consider Plaintiff's limitations in presenting hypothetical questions to the vocational expert. At the hearing, the ALJ informed the vocational expert that Plaintiff has worked in the past as a cashier, a maid, a home health aide and a bagger. The vocational expert testified that neither of the semi-skilled jobs, the cashier/checker nor the home health aide, had skills that would transfer to sedentary work. *Tr*. at 532. The ALJ then asked the vocational expert to

consider an individual of Plaintiff's age, education, work history, who could stand for two hours and sit for six hours, with the affective disorders listed in Exhibit 15F. *Id.* at 533. The vocational expert testified that Plaintiff could work as a Cashier II, a light exertional position that exists within the United States economy at the rate of approximately 681,000 jobs, and within Colorado at the rate of approximately 10,000 jobs. The vocational expert further testified that Plaintiff could work as an assembler of small products, a light exertional position that exists within the United States economy at a rate of approximately 168,000 jobs, and within Colorado at the rate of approximately 1600 jobs. To account for Plaintiff's standing limitations, the vocational expert testified that she would erode the total number of jobs in each category by approximately 25 to 50 percent. *Id.* at 533-34. Finally, the vocational expert testified that Plaintiff could work in a final assembler position, a sedentary position, and that such jobs exit within the United States economy at a rate of approximately 27,000 jobs, and within Colorado at a rate of approximately 260 jobs. The ALJ then presented a second hypothetical involving an individual with the same vocational characteristics, same psychological limitations, but who could sit for 10 to 20 minutes and stand a half an hour, and walk a half a block. *Id.* at 534. The vocational expert testified that under the second hypothetical, Plaintiff could still work at all three previously mentioned positions. *Id.* at 535.

Plaintiff asserts that the ALJ's hypothetical did not consider evidence that Plaintiff suffers from some pain and discomfort, or Plaintiff's limited sit/stand postural or positional limitations. I find that the record reflects that the ALJ accurately described

-11-

Plaintiff's physical and mental impairments in his hypothetical to the vocational expert. However, I agree with Plaintiff that a discrepancy exists between the Plaintiff's standing limitations, as described by the ALJ, and the jobs identified by the vocational expert. Here, the ALJ determined at step four that Plaintiff retained the ability to stand for at least 2 house in an 8-hour workday, and sit for a total of about 6 hours in an 8-hour workday. *Id.* at 24.  Defendant acknowledges that the ALJ's hypothetical restricted the jobs Plaintiff could perform to less than the standing requirements of "light work" as defined in the Dictionary of Occupational Titles ("DOT").  As discussed above, the only sedentary job identified by the vocational expert was the final assembler job.  While the vocational expert reduced the number of the non-sedentary cashier and small products assembler jobs to account for the standing limitations in the hypothetical, the vocational expert did not explain the apparent discrepancy between Plaintiff's limitations and her ability to perform non-sedentary jobs.  The ALJ did not elicit enough testimony from the vocational expert for me to determine whether Plaintiff could perform the non-sedentary jobs of cashier or assembler of small products, particularly in light of the fact that the ALJ found that Plaintiff could not perform any of her past work, which included work as a cashier.  Therefore, the ALJ's finding that Plaintiff could perform the jobs of cashier II or assembler of small products with her remaining RFC is not supported by substantial evidence in the record.

As for the remaining sedentary job of final assembler, I agree with Plaintiff that the ALJ failed to develop the record regarding whether a significant number of final assembler jobs exists in the region where Plaintiff lives or in several regions of the

country. "The determination that work exists in significant numbers in the national or regional economy does not depend on whether the work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired for a job if he or she applied." *Prince v. Apfel*, 149 F.3d 1191 (Table) (10th Cir. 1998). The Tenth Circuit in *Triamar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992) stated that "This Circuit has never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number' and rejects the opportunity to do so here." *Id.* at 1330. "Our reluctance stems from our belief that each case should be evaluated on its individual merits." *Id.* "Notwithstanding our reluctance, we note that several factors go into the proper evaluation of significant numbers." *Id.* The Eighth Circuit has succinctly stated these factors:

> A judge should consider many criteria in determining whether work exists in significant numbers, some of which might include: the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on." *Id.* (quoting *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir.1988) (quoting *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir.1988)). "'The decision should ultimately be left to the [ALJ's] common sense in weighing the statutory language as applied to a particular claimant's factual situation.'" *Id. Triamar* affirmed the ALJ's decisoin that 650-900 jobs in the state constituted a significant number of jobs where the ALJ considered the relevant factors.

*See id.*, 966 F.2d at 1329-1332. One of the factors noted by the Tenth Circuit in *Triamar* is "distance claimant is capable of traveling to engage in the assigned work."

The ALJ did not address Plaintiff's testimony that she lives in a rural area and has difficulty driving long distances. In addition, the vocational expert testified that the job of final assembler exists within Colorado at a rate of approximately 260 jobs. This Court has held that 200-250 jobs spread across Colorado is not a significant number, noting that the lowest number of jobs that a court considered a significant number was 500. *Jiminez v. Shalala,* 879 F. Supp. 1069, 1076 (D. Colo. 1995).

Therefore, I find that this case must be remanded for the ALJ to investigate whether there is a significant number of specific jobs Plaintiff could have done in light of her standing limitations and the factors set forth in *Triamar v. Sullivan, supra*

III.   CONCLUSION

Based upon the errors described above, I find that this case must be reversed and remanded for additional proceedings and further fact finding consistent with this Order.

Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner pursuant to 42 U.S.C. § 405(g).

Dated May 21, 2007

                                         BY THE COURT:

                                         s/ Wiley Y. Daniel
                                         Wiley Y. Daniel
                                         U. S. District Judge